UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA LYNN MATHIS,

                    Petitioner,           Case No. 2:16-cv-14292
                                         Hon. Denise Page Hood

v.

ANTHONY STEWART,

                    Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Tonya Lynn Mathis, ("Petitioner"), was convicted after a jury trial in the Oakland Circuit Court of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b; and two counts of second-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520c. Petitioner was sentenced to three concurrent terms, the longest of which is 225 months to 99 years for her first-degree criminal sexual conduct conviction.

The petition asserts six grounds for relief: (1) insufficient evidence was presented to sustain Petitioner's convictions, (2) the trial court erred in allowing testimony regarding the statistical likelihood of false allegations of

sexual abuse, (3) the trial court erred in allowing testimony regarding Petitioner's conduct with one of her other children, (4) the prosecutor committed misconduct during closing argument, (5) the trial court incorrectly scored the sentencing guidelines, and (6) Petitioner's sentence to life-time electronic monitoring violates the Ex Post Facto Clause.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but it will grant permission to appeal in forma pauperis.

## I. Background

The victim, Benjamin Mathis, Jr., testified that he was eighteen years old at the time of trial. Benjamin had three siblings: an older sister named Tiffany, and two younger siblings named Austin and Brennan. Benjamin testified that he and Austin lived with their father in Tennessee, he did not know where his older sister lived, and Brennan lived with her father in Michigan. Benjamin testified that when he was younger he used to live in an apartment in Michigan with Petitioner, his mother.

Benjamin's earliest memories were from his first day of Kindergarten, when Petitioner hit him in the nose and pushed him down steps. Petitioner was physically abusive toward Benjamin when they lived together, and she

often told him that she hated him.

Benjamin testified that Petitioner would have him bathe with her, and she directed him to wash her body including her breasts and vagina until she told him to stop.

Other times, Petitioner would direct Benjamin into her bedroom. Petitioner would lie down on her bed with her underwear removed. Petitioner would use an aggressive tone and direct Benjamin to insert his fingers inside her vagina while she moved her body. This happened on more than one occasion.

Benjamin testified that he did not talk about any of these incidents because he was too young to understand what was going on. He explained that Petitioner never touched him, and that it was always Petitioner directing him to touch her.

Benjamin's father, Benjamin Mathis Sr., "Mathis," testified that Benjamin was diagnosed with "oppositional defiant disorder and severe manic depressive," and Austin suffered from developmental disabilities. Dkt. 9-7, at 284, 309-10. Benjamin did not start treatment for his mental health problems until he was six or seven years old.

Mathis and Petitioner were married in 1996, when Benjamin was an

infant. They divorced in 1999. After the divorce, Mathis and Petitioner had joint custody of Benjamin. When Benjamin started school, they alternated weeks having custody. On January 1, 2005, Mathis obtained full physical custody of the boys by agreement with Petitioner. Mathis and his sons moved to Tennessee in 2009.

Years before Benjamin disclosed the sexual abuse, Mathis and several of his family members made complaints to Child Protective Services (CPS) regarding Petitioner's conduct with the boys. When CPS interviewed Benjamin, he told them about physical abuse but not about any sexual abuse, and Mathis was advised to file for sole custody. Benjamin did not see Petitioner from February 2009, when the family moved to Tennessee until he first testified in court in 2013.

When the family moved to Tennessee, Benjamin received counseling. Mathis testified that on May 31, 2013, he was driving Benjamin to a therapy appointment when Benjamin told him that he had been sexually abused. Mathis asked Benjamin if Petitioner had ever touched him, and Benjamin responded that she made him touch her. That night, Benjamin told Mathis he decided to tell him about what happened because he was dating a girl, which started to bring back memories.

Mathis testified that Benjamin fell apart after making his disclosure. He put on weight, was put on anti-depressants, and began additional counseling for sexual abuse victims. He could no longer maintain relationships with girlfriends. Prior to Benjamin's disclosure, Mathis suspected that Petitioner had physically abused the boys, but he did not suspect that any sexual abuse occurred.

Detective Jody Kendrick of the Oakland County Sheriff's Office testified that she began her investigation into the allegations in early Summer of 2013. A forensic interview was scheduled at a facility in Tennessee. Kendrick did not attend the interview, but she received recordings of it. During the interview, Benjamin made disclosures of sexual assault. Kendrick also received files on the CPS history involving Petitioner and Benjamin.

Paul Goffar testified that he was Brennan Elliott's father, a daughter from the brief relationship with Petitioner. Petitioner had full physical and legal custody of Brennan until January of 2013. On several occasions, Goffar made complaints to CPS about Petitioner. When the charges relating to Benjamin were made, CPS transferred custody of Brennan from Petitioner to Goffar. Brennan did not see Petitioner after that.

After Brennan starting living with him and his wife, they observed

Brennan masturbating and trying to place their son's hand down her pants. Goffar also saw Brennan straddling his son's back and looking down his pants with a flashlight. On another occasion, Goffar and his family went to a family barbecue where there were a lot of other children. Brennan came out of a bedroom where she and the other children had been playing, and her dress was tucked into the top of her tights. She was disheveled, and all the other children appeared to be shaken up. After these incidents, Goffar spoke with Brennan, and she described engaging in sexual activities with Petitioner. Goffar then contacted CPS. Brennan went to see her counselor and disclosed the abuse to the counselor as well. She was later interviewed at Care House.

Brennan testified that she was seven years old at the time of trial. She testified that she lived with her father and step-mother, and that Petitioner was her mother. When she used to live with her mother, Petitioner would tell her that she hated her. Brennan testified that she used to see Petitioner rub her own "private part" while laying naked in bed. Petitioner told Brennan that she should try to do it. Petitioner then took Brennan's arm and forced Brennan to rub her own private area with her hand. After these incidents, Brennan would sometimes join Petitioner in bed and they would both rub their own private

areas at the same time.

Brennan went to a place called Care House twice. Brennan did not tell the woman what happened with Petitioner until her second visit because she was too embarrassed. Brennan's father and stepmother did not talk about Petitioner at all before Brennan told them what happened. No one had ever told Brennan that Petitioner had done something to Benjamin.

Sarah Visker-Killips testified that she was a private consultant who does trainings and consultations on child abuse. She worked as a forensic interviewer at Care House. She reviewed police reports, CPS reports, transcripts, and the Tennessee interview regarding Benjamin's allegations of sexual abuse. Visker-Killips explained the purpose and protocols for forensic interviews. Because Benjamin was older there was less of a requirement to ensure he understood the difference between telling the truth and a lie. She did not recall any specifically leading or suggestive questioning in reviewing Benjamin's interview.

Visker-Killips testified regarding delayed disclosures, the reasons for delay, and the characteristics of children who delay a disclosure of sexual abuse. She opined that Benjamin's behaviors were consistent with other children who delayed disclosure of sexual abuse. She noted, however, that

it was up for the jury to determine whether Benjamin was being truthful.

On cross examination, defense counsel asked Visker-Killips whether she was aware of cases in which children were used as pawns in custody disputes and manipulated to make false accusations of sexual abuse. The witness testified on redirect that the research showed that the rate of such false-reporting was between one and four percent.

Based on this evidence the jury returned found Petitioner guilty of the charged offenses, and Petitioner was subsequently sentenced as indicated above.

After her sentencing, Petitioner filed a claim of appeal in the Michigan Court of Appeals and was appointed appellate counsel. Appellate counsel filed a brief on appeal, and together with Petitioner's own supplemental pro se brief, the following eight claims were raised in the Michigan Court of Appeals:

> I. As a matter of statutory interpretation, a defendant who causes a victim to penetrate the defendant is not guilty of first-degree criminal sexual conduct because no penetration "of another person" occurred. The evidence is insufficient as a matter of law and the conviction must be vacated and reduced to second degree.
>
> II. The trial court erred when it allowed a prosecution expert to offer purported "statistics" on the likelihood of guilt. The "statistics" violated MRE 403 and undermined the fairness of the trial. US Const Am VI, XIV.

III. The trial court erred when it denied a defense objection to the testimony of Paul Goffar on the behavior of his daughter. It violated MRE 401 or MRE 403, and undermined the fairness of the trial. US Const Am VI, XIV.

IV. Prosecutorial error of prosecutorial misconduct, burden shifting during the State's rebuttal argument, compounded by trial court error, deprived defendant of her due process right to a fair trial.

V. The sentencing guidelines offense variables ("OV") 10, 11 and 13 are scored in error. The corrections change the guidelines range. Resentencing is required.

VI. Defendant's judgment of sentence imposes lifetime electronic monitoring upon her release on parole. This sentencing term violates the ex post facto clauses of the United States Constitution and Michigan Constitution.

VII. *Lockridge* should not apply to a resentencing held in this matter for the following reasons: (1) the language of *Lockridge*, (2) the language of the guidelines statute, (3) the fact that the prosecution does not have Sixth Amendment rights, (4) Michigan law on retroactivity, and (5) the fact that no jurisdiction has applied *Alleyne* retroactively.

VIII. The trial court erred when it allowed a prosecution witness to offer purported "statistics" on the likelihood of guilt. The "statistics" violated MRE 403 and undermined the fairness of the trial. US Const Am VI, XIV.

The Michigan Court of Appeals affirmed Petitioner's convictions, but it remanded the matter to afford Petitioner an opportunity to seek resentencing, to vacate the sentence of lifetime electronic monitoring as a violation of the Ex Post Facto Clause, and to correct the judgment of sentence with respect to

the second-degree criminal sexual conduct convictions. *People v. Mathis*, No. 323831, 2016 WL 191901 (Mich. Ct. App. Jan. 14, 2016).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that she raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Mathis*, 880 N.W.2d 547 (Mich. 2016) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Sufficiency of the Evidence

Petitioner first claims that there was insufficient evidence to sustain her fist-degree criminal sexual conduct conviction because the evidence showed that she had the victim sexually penetrate her, whereas the statute requires sexual penetration "of another person." This claim fails because it hinges on a misinterpretation of state law that was conclusively resolved against Petitioner by the Michigan Court of Appeals:

> Defendant was convicted of CSC I pursuant to MCL 750.520b(1), which states in relevant part: "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person." MCL 750.520a(r) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

> Defendant argues that the words "with another person" and "another person's body" indicate that the perpetrator must penetrate another person. However, the statutory language indicates only that two persons must be involved. MCL 750.520b(1) requires that the perpetrator "engage[] in" sexual penetration. When a statute does not define a word, the Court may consult dictionary definitions. *People v. Morey*, 461 Mich. 325, 330 (1999). To engage means to "employ or involve oneself; to take part in; to embark on." Black's Law Dictionary (7th ed). Thus, the perpetrator must be a part of or involved in a sexual penetration, which could be accomplished by penetrating a victim or by having a victim penetrate the perpetrator. In *People v. Hack*, 219 Mich. App. 299, 302-303(1996), the Court found that the defendant committed sexual penetration "by causing the three-year-old girl to perform fellatio on the one-year-old boy" while the defendant videotaped the activity. In *Hack v. Elo*, 38 F

App'x 189, 193 (6th Cir. 2002) the court affirmed that the statutory definition of sexual penetration unambiguously included acts of penetration that were by means "other than direct touching by the accused individual." This interpretation is supported by the statutory context in which the words are used. See *People v. Couzens*, 480 Mich. 240, 249 (2008).

Here, complainant explained that he entered defendant's bedroom to find her without her clothes on and that defendant commanded him to approach and then arranged his fingers so as to extend his middle and pointer fingers from his fist. Defendant then told him to put his fingers in her vagina and that she moaned and moved until she told him to stop. This evidence established that defendant engaged in sexual penetration with complainant because she caused him to penetrate her with his fingers.

*Mathis*, No. 323831, 2016 WL 191901, *1-2.

The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. See *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). A federal court on habeas review must distinguish a due process-based constitutional sufficiency of evidence claim from state law claims which

are disguised as cognizable sufficiency claims. *Id.* (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)).

Here, as noted by the state appellate court, Petitioner's first claim does not actually challenge the constitutional sufficiency of the evidence. She does not allege that there was insufficient evidence offered to prove beyond a reasonable doubt that she had the victim sexually penetrate her. Rather, she asserts that the acts described by the victim did not constitute first-degree criminal sexual conduct under Michigan law. The state court's determination that her conduct was in fact covered by the statute involves a determination of a state-law issue that cannot be second-guessed on federal habeas review. Accordingly, Petitioner's first claim does not present a cognizable issue.

B. Evidence Regarding Rate of False Reporting of Sexual Abuse

Petitioner's second claim asserts that the trial court erred in allowing the prosecutor's expert, Visker-Killips, to testify that the rate of false reporting of sexual abuse in cases involving a custody dispute is between one and four percent.

Generally, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right

to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005), quoting *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir.2002). It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited on federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).

The Michigan Court of Appeals rejected this claim on the grounds that defense counsel opened the door to the disputed testimony by asking Visker-Killips on cross-examination whether she was aware of children being used as pawns in custody disputes and manipulated to make false allegations. *Mathis*, No. 323831, 2016 WL 191901, *2-3. Although Visker-Killips testified in response to the low statistical rate of false reporting, she also testified that those statistics did not pertain to circumstances where the custody dispute had occurred in the past - such as the present case. She also testified that it was up for the jury to determine whether Benjamin was being truthful.

"[T]he Supreme Court has defined 'very narrowly' the category of

infractions that violates 'fundamental fairness.'" *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Petitioner has failed to demonstrate the existence of clearly established Supreme Court law that prohibited the trial court from admitting evidence regarding studies of false allegations of sexual abuse after a defense attorney opens the door by asking whether a custody dispute created the likelihood of a false report. And any tendency for unfair prejudice was diminished by the witness's concession that the truthfulness of the victim was a matter for the jury to decide. This claim is without merit.

C. Evidence of Brennan's Conduct

Petitioner next claims that the trial court erred in admitting evidence from Goffar regarding their daughter's age-inappropriate conduct and testimony that Petitioner sexually assaulted Brennan as well. As with Petitioner's previous claim, this claim also fails because it cannot be supported by clearly established Supreme Court law.

Petitioner's argument that the state court violated Michigan Rule of Evidence 404(b) or any other provision of state law by admitting evidence of her prior bad acts against Brennan is non-cognizable on habeas review. See *Bey*, 500 F. 3d at 519; *Estelle*, 502 U.S. at 72 (Supreme Court's habeas

powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. United States*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process).

The Michigan Court of Appeals reasonably applied the law and properly held that Petitioner's due process rights were not violated by the admission of evidence to establish the petitioner's propensity to commit criminal acts was reasonable. See *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

D. Prosecutorial Misconduct

Petitioner next asserts that the prosecutor committed misconduct in closing argument by making improper burden-shifting arguments. The Michigan Court of Appeals summarized the factual background for this claim as follows:

> The prosecutor made the following comments on the testimonies of complainant and defendant's daughter:
>
> [H]ow do you explain the very visceral, raw reaction that these two had when they came into court and talked about it? How do you explain that? How do you

explain crying, throwing up? How do you explain [the daughter] who was crying, sitting here like this, didn't even want to look up? How do you explain their reaction about having to talk about this? How do you explain that? Now that -- we had some pretty good actors here. If that's the case these kids are phenomenal.

It is noted that the complainant took a break during his testimony so that he could vomit. Following defendant's closing argument, the prosecutor commented, "I was right, she couldn't explain it. I said I want to see how defense counsel explains the visceral reaction from [complainant] throwing;" defendant interjected with an objection, arguing that the prosecutor's comments were shifting the burden of proof by suggesting that defendant had to prove something. The trial court overruled the objection. The prosecutor completed the argument, stating, "No explanation. No explanation for getting physically ill."

*Mathis*, No. 323831, 2016 WL 191901, *3-4.

To be entitled to habeas relief on a prosecutorial misconduct claim, the petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair. *Parker v. Matthews*, 567 U.S. 37 (2012); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). If the misconduct was harmless, then as a matter of law, there was no due-process violation. See *Greer v. Miller*, 483 U.S. 756, 765 & n.7 (1987). In federal habeas, this means asking whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623,

637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946));
see also *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

The decision by the Michigan Court of Appeals that the above-described arguments did not constitute misconduct rendering Petitioner's entire trial fundamentally unfair was not unreasonable. Petitioner's defense was that the testimony of the victim and his sister was not credible. Though the prosecutor's response to the argument was couched in terms of "how can Petitioner explain," this was little more than a rhetorical device to direct the jury's attention to the apparent emotional manner in which the victim testified.

It is well-settled that a prosecutor may not shift the burden of proof to a defendant. See, e.g., *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir.1993). A prosecutor may, however, highlight inadequacies in the defense, see *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory. See *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). The prosecutor here was highlighting the inadequacy of Petitioner's defense by noting that it failed to account for the manner in which the victim testified. The claim was reasonably rejected by the state courts.

E. Sentencing Guidelines

Petitioner asserts that the trial court incorrectly scored the sentencing guidelines and relied on facts not admitted by Petitioner or found beyond a reasonable doubt by the jury in determining her sentence.

With respect to the correctness of the scoring of the guideline factors themselves, Petitioner fails to state a claim for federal-habeas relief because it is a state-law claim and is non-cognizable. See *Austin v. Jackson*, 213 F.3d 298, 300-01 (6th Cir. 2000).

With respect to Petitioner's related Sixth Amendment claim, the United States Supreme Court held that any fact which increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. See *Alleyne v. United States*, 133 S. Ct. 2151, 2155, 186 L. Ed. 2d 314 (2013). *Alleyne* does not apply to Petitioner's claim because the Supreme Court's holding in "*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range," which is what happened to Petitioner in this case. See *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); See also *United States v. James*, 575 F. App'x. 588, 595 (6th Cir. 2014) (collecting cases and noting that at least four post-*Alleyne* unanimous panels of the Sixth Circuit have "taken for

granted that the rule of Alleyne applies only to mandatory minimum sentences."); *Saccoccia v. Farley*, 573 F. App'x. 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.' . . . It said nothing about guidelines sentencing factors. . . ."). The Sixth Circuit, in fact, has ruled that *Alleyne* did not decide the question whether judicial fact-finding under Michigan's indeterminate sentencing scheme violates the Sixth Amendment. See *Kittka v. Franks*, 539 F. App'x. 668, 673 (6th Cir. 2013).

Although the Michigan Supreme Court relied on the *Alleyne* decision in holding that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial in *People v. Lockridge*, 498 Mich. 358 (2015), *Lockridge* does not provide a basis for habeas relief for Petitioner."The Michigan Supreme Court's decision in *Lockridge* does not render the result 'clearly established' for purposes of habeas review." *Haller v. Campbell*, No. 1:16-CV-206, 2016 U.S. Dist. LEXIS 35151, 2016 WL 1068744, at * 5 (W.D. Mich. Mar. 18, 2016). *Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme and cannot form the basis for habeas corpus relief. *Perez v. Rivard*, No. 2:14-CV-12326, 2015 U.S. Dist. LEXIS 74211, 2015 WL 3620426, at *12 (E.D. Mich. June 9, 2015).

Petitioner's sentencing guideline claims are without merit.

F. Ex Post Facto Clause

Petitioner finally asserts that the condition in her sentence that she be subject to lifetime electronic monitoring violates the Ex Post Facto Clause because it was not part of Michigan's criminal sexual conduct statute at the time of the offenses. This claim is moot because the Michigan Court of Appeals agreed with Petitioner and ordered this part of her sentence to be vacated. *Mathis*, No. 323831, 2016 WL 191901, *7.

Because none of Petitioner's claims merit relief, the petition will be denied.

## IV. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, "a circuit justice or judge" must issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to

proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of her claims. The Court will therefore deny a certificate of appealability with respect all of Petitioner's claims. Furthermore, if Petitioner chooses to appeal the Court's decision, she may proceed in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  November 30, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager